RUTH REYNOLDS, on behalf of PEDRO ALBIZU CAMPOS, Plaintiff and Appellant, *v.* GERARDO DELGADO, WARDEN OF THE STATE PENITENTIARY, Defendant and Appellee.

No. AP-63-41.        Decided May 12, 1964.

*Conrad J. Lynn* and *Carlos Carrera Benítez* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Irene Curbelo, Assistant Solicitor General,* for appellee.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

On September 18, 1962, Ruth Reynolds, on behalf of Pedro Albizu Campos, filed in this Court a petition for a writ of habeas corpus in which she alleged that Albizu was restrained of his liberty under the custody of defendant Gerardo Delgado, Warden of the Commonwealth Penitentiary of Puerto Rico. The reason for such detention was the revocation by the Governor of Puerto Rico, on March 6, 1954, of the conditional pardon[1] granted to the prisoner by him on

---

[1] The document by virtue of which appellant was pardoned, copied verbatim, reads as follows:

"To whom it may concern:

"WHEREAS, Pedro Albizu Campos was convicted and sentenced in the Superior Court of San Juan, Puerto Rico, San Juan Part, in 1951 for several offenses in cases No. F-2796 (Assault to Commit Murder); M-6336 (Violation of Section 12—Act No. 67 of May 13, 1934, as amended); M-6341 (Non-registration of Firearms); M-6338

September 30 of the previous year.[2] The grounds for the alleged illegality of the imprisonment were (a) that the revocation of the pardon took place without the violation by the prisoner of any of the pardon's conditions; (b) that certain

---

(Non-registration of Firearms); M-6340 (Non-registration of Firearms); M-6337 (Violation of Section 11—Act No. 67 of May 13, 1934, as amended); F-2795 (Violation of Act No. 53 of June 10, 1948, as amended), part of said sentences not being yet served;

"WHEREAS, in view of the poor health and advanced age of the prisoner, I consider this case as fit for the exercise of executive grace;

"THEREFORE, I, LUIS MUÑOZ MARIN, Governor of the Commonwealth of Puerto Rico, by virtue of the authority vested in me by the Constitution of Puerto Rico, do hereby grant unto him, the said Pedro Albizu Campos, a pardon of the offenses of which he was convicted, relieving him from serving the rest of the sentences in the aforementioned cases and restoring to him all his civil rights and prerogatives under the Constitution of the Commonwealth of Puerto Rico, all the foregoing being subject to the condition of a summary revocation of this pardon should Pedro Albizu Campos attempt or plot against the public order, intending to subvert by violence or terror, the existing constitutional order established and disregard the will of the People of Puerto Rico democratically expressed by its vote.

"Should this pardon be summarily revoked, Pedro Albizu Campos may file in the courts of the country a petition for Hábeas Corpus to question the determination of nonperformance on his part of the condition annexed herein.

"Nothing in this proclamation shall be construed as a limitation of the freedom of speech of Pedro Albizu Campos, if he so desires, to struggle, through constitutional and democratic means, for the independence of Puerto Rico, or for any other causes which interest him."

[2] For other antecedents of the case, see *People* v. *Albizu*, 77 P.R.R. 843 (1955), in which we argued the conditional nature of the pardon granted and stated, among other things, at p. 848, that:

"On the other hand, when the proclamation of pardon embraces an express reservation of the right of summary revocation—as here—the pardon is subject to said revocation without need of previous judicial determination as to the breach of the condition annexed. *Ex parte Davenport, supra.* See Annotation in 29 A.L.R.(2d) 1074, 1125 *et seq.* Such principle is based on the theory that upon accepting a pardon containing an express reservation of a right of summary revocation, the summary revocability thereof is accepted; and since the convict is enjoying liberty as an act of grace, his right thereto ceases when the pardon granted is revoked pursuant to its terms, until he challenges successfully the executive determination of breach of the conditions, under clear allegations that he has met them."

provisions, insofar as they confer on the Governor the right to summarily revoke the pardon, without a prior hearing, are unconstitutional;[3] (c) that the procedure regarding his summary arrest and imprisonment without any hearing is also unconstitutional as construed and applied in this case. She specifically reserved certain arguments concerning the legality of the arrest to such later point when they became necessary in the event that the Commonwealth should be able to prove that there existed reasonable grounds to believe that the prisoner had violated the aforesaid conditions. On September 20 we ordered the issuance of the corresponding writ directing defendant to appear on the following 26th day before the Superior Court, San Juan Part, at 10:00 a.m., with a written report containing all the requirements established by § 476 of the Code of Criminal Procedure, 34 L.P.R.A. § 1748.

At the time and hour fixed, defendant appeared before the Court and filed his return alleging that he had Pedro Albizu Campos under his custody because the latter had been sentenced by the Superior Court, San Juan Part, in criminal cases M-6341, M-6340, M-6337, M-6338, and M-6336, to imprisonment in jail for a period of 10 years and 9 months; that the prisoner was serving those sentences by virtue of the revocation by the Governor of Puerto Rico of a conditional pardon granted to the former by the latter[4] and that

---

[3] It was admitted at the hearing that the conditions themselves were valid (Tr. Ev. 24).

[4] The document revoking the pardon, literally copied, reads:

"To whom it may concern:

"WHEREAS, on September 30, 1953, I granted Pedro Albizu Campos a pardon of the offenses of which he was convicted and sentenced in the year 1951, subject to a summary revocation of that pardon should the aforesaid Pedro Albizu Campos attempt or plot against the public order, intending to subvert by violence or terror the existing constitutional order established and disregard the will of the people of Puerto Rico democratically expressed by its votes;

"WHEREAS, Pedro Albizu Campos has violated the conditions of

said revocation was due to the fact that Albizu "violated the conditions of his pardon, attempting and conspiring against the public security, intending to subvert by violence and terror the constitutionally established order, not only disregarding the democratic will of the people of Puerto Rico, but also jeopardizing the security and lives of its citizens." He also denied the violation of any constitutional right of petitioner because of such revocation of the pardon. To the return were attached copies of the various sentences above mentioned, of the pardon and of the revocation, and an affidavit made by defendant stating that he had had petitioner under his immediate custody in the Commonwealth Penitentiary until November 9, 1956, on which date the prisoner had been removed, for health reasons, to the Presbyterian Hospital, where he has been confined ever since.[5]

At this stage of the proceedings the trial court ordered a recess to enable counsel for petitioner to acquaint himself with the allegations contained in the return. When the hearing was resumed, the legality of the filing of the traverse was

his pardon;

"THEREFORE, I, Luis Muñoz Marín, Governor of the Commonwealth of Puerto Rico, do hereby revoke, cancel, and annul the conditional pardon granted to Pedro Albizu Campos on September 30, 1953.

"The Chief of Police of Puerto Rico is likewise ordered to immediately arrest Pedro Albizu Campos and to take him to an institution designated by the Secretary of Justice in order that he may serve the remainder of the sentences."

[5] In that affidavit it is furthermore stated that the sentences imposed on Albizu for various counts in violation of Act No. 53 of June 10, 1948, in case F-2795 had been "annulled" by means of the Governor's pardon dated December 20, 1959, and that another sentence of 7 to 15 years' imprisonment imposed in case F-2796 for the crime of assault to commit murder had been extinguished in full.

Until May 10, 1964, Albizu has been confined for 13 calendar years, 1 month, and 1 day. The extinguished sentence was reduced through good-conduct allowance to 9 years and 6 months. In order to comply with the sentences he is now serving—which, after being credited with the allowance for good conduct, would be reduced to 8 years, 2 months, and 4 days —he has 3 years, 7 months, and 1 day.

raised, resting on *Hoyos* v. *Superior Court*, 80 P.R.R. 612 (1958), in which, at p. 618, we held that:

". . . the function of a petition in a habeas corpus proceeding is to insure or obtain the issuance of the writ by the judge or court, and that once the writ has been issued the petition has accomplished all its purposes. The writ requires a written return from the person against whom it is issued. This return is the allegation which corresponds to the complaint in civil actions. *Vázquez* v. *Díaz*, 63 P.R.R. 838, 841. The party brought before the court or judge, on the return of the writ, may file a traverse denying or controverting any of the material facts or matters set forth in the return, or except to the sufficiency thereof, or allege any fact to show either that his imprisonment or detention is unlawful, or that he is entitled to his discharge. This traverse is the allegation which joins the issue in the case. If the return is not attacked in the stated manner by the corresponding traverse, it is considered accepted, and if it is sufficient at law, the writ must be denied and the prisoner recommitted. The petition may be treated as a traverse to the writ when it alleges the essential facts in support of petitioner's case, by stipulation of the parties and the approval of the court. If no stipulation is made, the petition need not be considered in settling the controversy involved in the proceeding."

Faced with this situation, counsel for petitioner, Mr. Lynn, addressed the trial court and on the ground that the return did not set forth any "facts, the manner in which he [Albizu] violated the conditions of the pardon," he claimed that he did not have to file any traverse whatever and that the prisoner should be forthwith released. After a brief argument, and notwithstanding his former position, petitioner filed a traverse in the record alleging that:

"1. That the return and the exhibits submitted by the respondent alleges only conclusions of law, namely, that the prisoner violated the conditions of his pardon and that the prisoner subverted the public order, attempted to conspire against the public security, intended to subvert by violence and terror the constitutionally established order.

"2. That said conclusions merely repeat the words of the pardon in listing the matters which would be considered sufficient to cause revocation of the pardon.

"3. The return does not set forth any facts to support these conclusions of law and in the absence of any proof of facts the prisoner should be released. The petitioner denies that there could be any facts to support these conclusions of law but is not prepared to controvert the existence of nothingness."

The Government insisted on the insufficiency of this traverse. Counsel Lynn replied that the purpose of the hearing was to force the establishment of petitioner's acts whereby he attempted or conspired against the public security or otherwise violated the conditions of his pardon. He asserted: "In the absence of proof of such facts the Court is bound to accept the allegations of the petition that the prisoner, Pedro Albizu Campos, is unlawfully deprived of his liberty."

Despite this reiteration of the position taken by counsel for petitioner and despite acknowledging that, in view of the state of the allegations, the Government's motion to dismiss did lie, the trial court stated that "you are here and now given an opportunity to elaborate the traverse, should you wish to do so, controverting the facts, if you think you ought to do it, thus the question now under issue would be disposed of. It shall be, as I originally announced, the duty of the Prosecution to establish, not by way of findings but of specific facts, on what the violation that caused the revocation of the pardon consisted." He added: "this means that now the traverse practically becomes the answer to a complaint which joins an issue of facts and that if such issue of facts does not exist the prayer of the return must be granted." He again indicated to Counsel Lynn that "if you wish, the Court will reserve for you your allegation concerning the insufficiency of the return regardless of whether you answer

by way of the traverse the allegations of the return, and no waiver on your part shall be understood."

In view of the respective positions of the parties the presiding magistrate pointed out:

". . . the Court issues the following three interlocutory decisions:

"1st. Its opinion sustaining the sufficiency of the return is hereby vacated, and the parties are given ten (10) days to argue the question through briefs.

"2nd. Should the Court decide that the return is sufficient, it is hereby understood that the petitioner will rest his case, according to his pleading already presented verbally here, and,

"3rd. Then the Court shall decide whether the decision of dismissing the petition, as requested by the District Attorneys, be in order or not to be granted."

On October 26, 1962, the Court entered an order upholding the sufficiency of the return. Instead of dismissing the petition it gave petitioner 30 days to deny or controvert "the issue of facts" set forth in the return. It ruled that, in that case, the parties would be summoned to a hearing; otherwise, the writ issued would be considered to have been quashed. On November 19, Counsel Lynn informed the Court that he elected to stand on the issue raised in the traverse challenging the sufficiency of the return, on the ground that any other course of action might mean a waiver of the constitutional and statutory rights of the petitioner.

Petitioner appealed on December 11, 1962. On January 7, the transcript of evidence was requested and it was ordered on the following 9th. It was not until July 23, 1963, that the stenographer's fees were deposited, and the stenographer was instructed to prepare the transcript with preference. The transcript was filed on October 9. It was approved on the 18th of that same month, after giving consideration to the amendments proposed by both parties. The judgment roll and the transcript of evidence were filed in this Supreme Court on November 4.

The hearing before this Court was held on February 12. Subsequently the Solicitor General filed a supplemental written report, wherefore we granted appellant until the 29th of that month to reply. He did not. The transcript of the hearing before this Court was attached to the record on March 30, 1964, on which date the matter was definitively submitted to us for decision.

▬ As we have had occasion to state in the leading case of *Hoyos* v. *Superior Court*, 80 P.R.R. 612 (1958), the function of a petition in a habeas corpus proceeding is to obtain the issuance of the writ by the judge or court to determine the legality of petitioner's detention. Once this purpose is accomplished, its effect ends, unless its allegations are reproduced in lieu of petitioner's obligation to file a traverse to defendant's return, provided it contains the essential facts in support of petitioner's case. This reiteration may be made by stipulation of the parties and approval of the Court (p. 619). Even if petitioner's contention is not set forth in the petition we have admitted the practice of having it done orally during the hearing of the petition once the return has been filed. *Coll Moya* v. *Warden, Municipal Jail*, 89 P.R.R. 221 (1963). As a matter of fact, all that is needed is that an issue be actually joined. That is why the obstinate attitude of counsel for petitioner in refusing to allege expressly that petitioner had not violated the conditions of the pardon, even after being offered several opportunities to do so while it was not to be understood thereby that the raising of such an issue would constitute a waiver of the alleged constitutional questions presented, falls short of being unexplainable.

▬ In *Córcoles Droz* v. *Warden of Penitentiary*, 89 P.R.R. 1 (1963), we held that "After the writ is issued, the habeas corpus constitutes essentially an inquiry opened by the State itself to investigate the validity of the deprivation of freedom of one of its citizens. In that sense the function of the court is not that of a mere passive arbitrator of ordinary adversa-

tive controversies who, in making a decision, depends only on those elements of judgment which the adverse parties deem proper to submit to it. In habeas corpus the State has a prime interest to discover the truth, where the freedom of the individual is concerned."

■ After examining defendant's return in the light of the applicable statutory provisions—§ 476 of the Code of Criminal Procedure, 34 L.P.R.A. § 1748—and even though it could undoubtedly have been more precise insofar as the factual circumstances responsible for the revocation of the pardon are concerned, it cannot be held to be insufficient. Defendant affirmatively states that he has petitioner under his custody, he indicates the authorization or cause for the detention, he attaches thereto copies of the sentences and documents proving such authorization, and he explains satisfactorily the transfer in the place of custody, stating to whom, on what date and place, the cause and authorization by virtue of which the transfer took place. This is all that is needed. Therefore, it was petitioner's move to reproduce his basic allegation, which he had already made in the petition, regarding compliance with the conditions of the pardon.

■ Although it could be concluded that the refusal to issue the writ should be affirmed; it is advisable under the position we announced in the *Córcoles Droz* case and all the attendant circumstances herein, for us in this particular case to reject any procedural nicety, notwithstanding that the obstinacy of counsel for petitioner may have contributed thereto, and to investigate the legality of the imprisonment of Pedro Albizu Campos. This is the third case in which this has been attempted.[6] And as we have seen, the prisoner shall

---

[6] In *Lynn* v. *Delgado*, 145 F.Supp. 906 (1956), the U.S. District Court for Puerto Rico refused to issue the writ in view of the fact that the relief available in the Commonwealth courts had not been exhausted.

On September 14, 1961, we issued a writ at the request of Arthur

have served the sentences in approximately four and a half years. Were we to limit ourselves to affirming the judgment of the trial court, we would simply be forcing him to start judicial proceedings all over again. For this reason we hold that the allegation of the petition to the effect that Albizu did not violate the conditions of the pardon is understood to have been incorporated as part of the traverse within the peculiar allegation therein contained to the effect that "the petitioner denies that there could be any facts to support these conclusions of law." The issue being thus joined, it is proper to hold a hearing on the merits.

The judgment entered by the Superior Court, San Juan Part, quashing the writ issued shall be vacated, and in order to prevent further delays, a hearing on the merits[7] in this Supreme Court is set for May 25, 1964, at 9:00 a.m.

---

Harvey, but the Superior Court, San Juan Part, before which we ordered the hearing to be held, dismissed the petition when Harvey failed to establish that he was authorized by the prisoner to file it on his behalf.

[7] We anticipate that because of the similarity with the cases involving probable cause for the detention, the burden of proof to establish that petitioner violated the provisions of the pardon rests with the Government. Cf. footnote 3, Hoyos v. Superior Court, 80 P.R.R. 612, 619 (1958).